IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Luis Vicente Cruz, | : | |
| | : | |
| Petitioner, | : | Case No. 1:26-cv-158 |
| | : | |
| v. | : | |
| | : | Judge Susan J. Dlott |
| Kristi Noem, in her Official Capacity, | : | |
| Secretary of the U.S. Department of | : | Order Granting Petition for Writ of |
| Homeland Security, *et al.* | : | Habeas Corpus |
| | : | |
| Respondents. | : | |
| | : | |

Pending before the Court are on the Emergency Petition for Writ of Habeas Corpus

("Habeas Petition") and the Motion for Summary Judgment filed by Petitioner Luis Vincente

Cruz.  (Docs. 3, 12.)  Vincente Cruz, a citizen of Guatemala, challenges his detention at the

Butler County, Ohio Jail in the custody of Respondents, including the United States Immigration

and Customs Enforcement ("ICE").  He argues that he is being unlawfully held and denied a

constitutionally adequate custody redetermination hearing—a bond hearing—in a misapplication

of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1225(b)(2)(A) and 1226(a).  As the

Court has done in analogous cases, the Court again holds here that detainees like Vincente Cruz,

who entered the country almost twelve years ago without an inspection, are entitled to a bond

hearing under § 1226(a).[1]  For the reasons that follow, the Court holds that Vincente Cruz's

continued detention without a bond hearing violates the INA and his due process rights.  The

---

[1] *See e.g.*, *Ramirez Quintana v. Lynch*, 1:25-cv-919, 2026 WL 746359 (S.D. Ohio Mar. 17, 2026); *Valdez Lopez v. Raycraft*, No. 1:26-cv-68, CM/ECF Doc. 17 (S.D. Ohio Apr. 4, 2026).

1

Court will **GRANT** the Habeas Petition and **DENY AS MOOT** the Motion for Summary Judgment.

Also pending is a Motion to Dismiss filed by the Butler County Sheriff arguing that he is not the immediate custodian of Vicente Cruz. (Doc. 7.) The Court will **DENY AS MOOT** the Motion to Dismiss.

## I. BACKGROUND

### A. Factual History

Vincente Cruz is a citizen of Guatemala born in 1997, and he entered the United States without an inspection at or near Hidago, Texas on or about July 25, 2014 as a minor. (Doc. 14-2 at PageID 111; Doc. 14-3 at PageID 117.) He conceded the initial charge of removability in a pleading dated February 19, 2015. (Doc. 14-3 at PageID 117.) Respondents' attorney explains that the initial removal proceedings were "terminated by the Immigration Court pursuant to *Niz-Chavez v. Garland*, 593 U.S. 155 (2021)" because the Notice to Appear served on Vincente Cruz "did not include the date, place or time of hearing." (Doc. 14 at PageID 90.) However, an immigration report filed into the record states that an Immigration Judge terminated his proceedings in 2017. (Doc. 14-4 at PageID 128.)

Vincente Cruz was encountered at the Bulter County, Ohio Jail on December 23, 2025 after he was arrested for resisting arrest and obstruction in Hamilton, Ohio. (Doc. 14-4 at PageID 127.)[2] He continues to be detained at the Butler County, Ohio Jail in Respondents' custody. (Doc. 3 at PageID 39.)

On December 23, 2025, the Department of Homeland Security ("DHS") re-initiated

---

[2] The parties did not provide any additional information about this arrest.

removal proceedings by issuing him a Notice to Appear before an Immigration Judge of the United States Department of Justice ("DOJ") in Cleveland, Ohio on January 29, 2026. (Doc. 14-5 at PageID 130–133.) On the Notice to Appear form, DHS checked the box stating that Vicente Cruz was "an alien present in the United States who has not been admitted or paroled." (*Id.*) DHS did not check the two alternative boxes stating that he was "an arriving alien" or that he had been "admitted to the United States, but [was] removable for the reasons stated below." (*Id.*) DHS made the following allegations:

1. You are not a citizen or national of the United States;

2. You are a native of GUATEMALA and a citizen of GUATEMALA;

3. You arrived in the United States at or near unknown place, on or about unknown date;

4. You were not then admitted or paroled after inspection by an Immigration Officer;

5. You are an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act; and/or

6. You are an immigrant not in possession of a valid unexpired passport, or other suitable travel document, or document of identity and nationality.

(*Id.* at PageID 130, 133.) DHS charged Vicente Cruz with being an alien present in the United States without being admitted or paroled in violation of 8 U.S.C. § 1182(a)(6)(A)(i) and without entering the United States without valid required entry, identification, and nationality documentation in violation of 8 U.S.C. § 1182(a)(&)(A)(i)(I). (*Id.* at PageID 133.) The Immigration Judge issued an Order on February 25, 2026 sustaining the factual allegations and the charges stated in the Notice to Appear. (Doc. 14-6 at PageID 134.)

Vicente Cruz filed a Motion for Custody Redetermination—a bond hearing—with the Immigration Judge on March 1, 2026. (Doc. 14-7 at PageID 137–140.) He stated therein that he

3

is married to a United States citizen with whom he has had one child.  (*Id.* at PageID 138.)  He also states that his wife is pregnant with their second child.  (*Id.*)  He stated that he resides in Ohio, owns a business, and pay taxes.  (*Id.* at 138, 140.)  Finally, he states that his wife has filed a Petition for Alien Relative on DHS Form I-130, the first step necessary to secure a green card for him.  (*Id.* at PageID 140.)  The Immigration Judge denied his request stating that "the Court does not have authority to redetermine bond in this case."  (Doc. 14-8 at PageID 142.)

Vicente Cruz has also filed an Application for Cancellation of Removal and Adjustment of Status for Certain Nonpermanent Residents.  (Doc. 14-9.)  A merits hearing is set for April 6, 2026.  (Doc. 14-10.)

**B.      Procedural Posture**

Vicente Cruz filed his Habeas Petition on February 13, 2026 against Respondents Kristi Noem in her official capacity as Secretary of DHS; Pamela Bondi in her official capacity as the Attorney General; Helaine Tasch in her official capacity as the Cincinnati Field Office Director for Enforcement and Removal Operations with ICE; and Butler County Sheriff Richard Jones in his official capacity.  (Doc. 3.)  He alleges that Respondents have unlawfully detained him without an individualized bond hearing.  (*Id.* at PageID 38–40, 44–54.)  He alleges that Respondents have wrongfully asserted that his detention is governed by 8 U.S.C. § 1225(b)(2)(A)—which requires mandatory detention—when, in fact, his detention is governed by 8 U.S.C. § 1226(a)—which provides for discretionary detention and an individualized bond hearing.  (*Id.* at PageID 44–51.)  He asserts multiple claims for relief:

1. Claim for habeas corpus under 28 U.S.C. § 2241;

2. Violation of substantive and procedural due process under the Fifth Amendment;

4

3. Violation of the INA and the Administrative Procedure Act ("APA");

4. Violation of the Suspension Clause of the United States Constitution;

(*Id.* at PageID 56–57.) On February 27, 2026, Vicente Cruz filed a Motion for Summary Judgment. (Doc. 12.)

Respondents filed their Return of Writ to the Habeas Petition on March 13, 2026. (Doc. 14.) They assert that Vicente Cruz is being properly detained under 8 U.S.C. § 1225(b)(2)(A) and that his due process rights are not being violated. (*Id.* at PageID 89–91, 97–98, 104.) They also assert that Vicente Cruz needs to exhaust administrative remedies before seeking habeas relief. (*Id.* at PageID 106–107.)

Finally, the Butler County Sheriff filed a Motion to Dismiss on February 18, 2026 arguing that he is not the immediate custodian of Vicente Cruz, but that Vicente Cruz is merely being detained by federal authorities at the Butler County Jail through a contract with ICE. (Doc. 7.) Vicente Cruz did not file a brief in opposition to the Motion to Dismiss. The use of the term Respondents herein will refer only to the federal Respondents, and not to the Butler County Sheriff.

## II. LAW AND ANALYSIS

The Court first will address the threshold issue of whether administrative exhaustion is required. Then the Court will briefly address the applicability of a class action decision from the Central District of California before turning the merits of the case. The key issue is whether Vicente Cruz's detention is governed by 8 U.S.C. § 1225(b)(2)(A)—in which case detention is mandatory—or by 8 U.S.C. § 1226(a)—in which case Vicente Cruz is eligible for a bond hearing. Finally, the Court also will examine Vicente Cruz's due process claim. Because Vicente Cruz is entitled to habeas relief under these INA and due process claims, the Court does

5

not need to examine whether he might be entitled to relief under the APA or the Suspension Clause.

## A.      Exhaustion of Administrative Remedies

Respondents contend that the Habeas Petition should be dismissed because Vicente Cruz did not first exhaust his administrative remedies.  Vicente Cruz asserts that administrative exhaustion is not mandatory and should not be required here.  He contends that Immigration Judges are refusing to provide custody redetermination hearings—bond hearings—on the authority of *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 220, 229 (BIA Sept. 5, 2025).  In that case, the Board of Immigration Appeals held that noncitizens who are present in the United States without admission are subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), without eligibility for bond, during the duration of their removal proceedings.  *Id.* at 220, 229. For the reasons below, the Court will not require prudential exhaustion in this case.

Generally, a petitioner must exhaust administrative remedies before filing a habeas corpus petition under 28 U.S.C. § 2241, although the statute itself does not expressly contain such a requirement.  *McCarthy v. Madigan*, 503 U.S. 140, 144–145 (1992), *superseded by statute as stated in Woodford v. Ngo*, 548 U.S. 81 (2006).  The decision to require exhaustion is within the discretion of the district court when it is not mandated by statute.  *Velasco-Sanchez v. Raycraft*, No. 2:25-cv-13730, 2025 WL 3553672, at *5 (E.D. Mich. Dec. 11, 2025) (citing *McCarthy*, 503 U.S. at 144).

There is no clear statement from Congress "that exhaustion is required before a noncitizen seeks habeas review to challenge pre-removal detention."  *Salvador F.-G. v. Noem*, No. 25-cv-0243-CVE-MTS, 2025 WL 1669356, at *6 (N.D. Okla. June 12, 2025).  Courts within the Sixth Circuit have applied the Ninth Circuit's test set forth in *United States v. California*

*Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983), for prudential exhaustion.  *See, e.g.*, *Lopez-Campos v. Raycraft*, 797 F.Supp.3d 771, 778 (E.D. Mich. 2025).  Under that test, courts may require prudential exhaustion when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;
>
> (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and
>
> (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Id*.  These factors weigh against imposing prudential exhaustion here.  Statutory interpretation issues are properly addressed by federal courts.  Also, because Vicente Cruz has raised a due process challenge to his continued detention without a bond hearing, exhaustion is not appropriate because the BIA cannot review such constitutional challenges.  *See, e.g.*, *Sterkaj v. Gonzalez*, 439 F.3d 273, 279 (6th Cir. 2006).

Alternatively, even when a district court might normally require prudential exhaustion, the court may waive the requirement.  Requiring exhaustion in this case would very likely subject Vicente Cruz to unreasonable delay, as appeals to the BIA of an immigration judge's decision denying bond often take six months or longer to resolve.  *Lopez-Campos*, 797 F.Supp.3d at 778–779 (citing *Rodriguez v. Bostock*, 779 F.Supp.3d 1239, 1245 (W.D. Wash. 2025)); *see also Velasco-Sanchez*, 2025 WL 3553672, at *5 ("Exhaustion is also excused when delay means hardship.") (citation omitted).  Finally, prudential exhaustion also is not required where it would be futile, as it almost certainly would be here.  By its decision in *Matter of Yajure Hurtado*, the BIA has already rejected the statutory argument that Vicente Cruz presents to this Court.  Respondents do not contend that the BIA is likely to reverse course on its *Matter of*

7

*Yajure Hurtado* ruling.[3]

For these reasons, the Court finds that prudential exhaustion was not required for Vicente Cruz to bring this action.

**B.      *Maldonado Bautista v. Santacruz***

Vicente Cruz initially moved for summary judgment on the basis that he is entitled to a bond hearing as a member of the Bond Eligible Class certified in *Maldonado Bautista v. Santacruz*, 5:25-cv-01873-SSS-BFM, —F.Supp.3d—, 2026 WL 468284, at *10 (C.D. Cal. Feb. 18, 2026).  The district court in *Maldonado Bautista* most recently purported to vacate *Matter of Yajure Hurtado*, the BIA decision upon which Immigration Judges are relying to hold that noncitizens like Vicente Cruz are detained under 8 U.S.C. § 1225(b)(2)(A) and not entitled to bond hearings.  —F.Supp.3d—, 2026 WL 468284, at *10.  The Government has appealed that decision.  The Ninth Circuit has temporarily stayed enforcement of the judgment in favor of the Bond Eligible Class outside of the Central District of California and the decision vacating *Matter of Yajure Hurtado*.  *Maldonado Bautista v. United States DHS*, No. 26-1044, Dkt 5, Order (9th Cir. Mar. 6, 2026).  The Court will not grant summary judgment or habeas relief on the basis of *Maldonado Bautista*.

**C.      INA Claims**

The Court now turns to merits of the Habeas Petition.  Vicente Cruz alleges that his continued detention without a bond hearing violates the INA.  (Doc. 3 at PageID 44–51, 56–57.)  His continued detention without a bond hearing is unlawful if his detention is governed by 8

---

[3]  The attorney for Vincente Cruz suggests in the Habeas Petition that Chief Immigration Judge Therea Riley has instructed Immigration Judges to continue to follow *Matter of Yajure Hurtado*. (Doc. 3 at PageID 38, 40.)  She purported to attach a copy of the written guidance from Chief Judge Riley, but no such exhibit was filed with the Habeas Petition.

8

U.S.C. § 1226(a).  Conversely, his detention is mandatory if it is governed by 8 U.S.C. § 1225(b)(2)(A).  As explained below, the Court is persuaded by the "overwhelming majority of fellow jurists from well over half of the federal judicial districts in the country" who have found that "[d]etention under § 1226(a) attaches where DHS encounters a noncitizen within the interior [of the United States] after admission or after a substantial period of continuous presence, whereas § 1225(b) applies only where the individual encountered is 'seeking admission' at the border or its functional equivalents." *Ortiz Guiterrez v. Raycraft*, No. 1:26-cv-69, —— F.Supp.3d——, 2026 WL 456065, at *3 (S.D. Ohio Feb. 18, 2026).

The Court starts with the text of the two INA detention provisions.  When faced with a question of statutory interpretation, the Court's "inquiry 'begins with the statutory text, and ends there as well if the text is unambiguous.'" *In re Vill. Apothecary, Inc.*, 45 F.4th 940, 947 (6th Cir. 2022) (quoting *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 346 (6th Cir. 2016)).  The Court must read each word in the statute in line with "its ordinary, contemporary, common meaning." *Ky. v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022) (quoting *Walters v. Metro. Educ. Enters., Inc.*, 519 U.S. 202, 207 (1997)).  If the plain text of the statute leaves ambiguity, courts turn to the canon that "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (cleaned up); *see also Corley v. United States*, 556 U.S. 303, 314 (2009) ("statute(s) should be construed so that effect is given to all [their] provisions[.]") (citation omitted).

1.      **8 U.S.C. § 1225(b)**

Section 1225(b)(2)(A) imposes mandatory detention of an "applicant for admission" who is "seeking admission" if an immigration officer has determined that the applicant is not entitled to admission in the United States:

**§ 1225. Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing**

* * *

**(b) Inspection of applicants for admission**

* * *

**(2) Inspection of other aliens**

**(A) In general**

Subject to subparagraphs (B) and (C), in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A) (italicized emphasis added). This statutory section defines an "applicant for admission" in § 1225(a)(1) as an alien "present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . . ." 8 U.S.C. § 1225(a)(1). Additionally, "admission" and "admitted" are defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13(A). "A noncitizen detained under [s]ection 1225(b)(2) may be released only if he is paroled 'for urgent humanitarian reasons or significant public benefit' pursuant to 8 U.S.C. § 1182(d)(5)(A)." *Lepe v. Andrews*, 801 F.Supp.3d 1104, 1111 (E.D. Cal. 2025) (citation omitted). "Other than this limited exception (which is not implicated here), detention under § 1225(b)(2) is considered mandatory." *Lopez Benitez v. Francis*, 795 F.Supp.3d 475, 484 (S.D.N.Y. 2025) (cleaned up); *see also Lopez-Campos*, 797 F.Supp.3d at 777.

      2.      **8 U.S.C. § 1226**

Section 1226(a), on the other hand, allows for discretionary detention, as shown by the

use of the word "may":

> **§ 1226. Apprehension and detention of aliens**
>
> **(a) Arrest, detention, and release**
>
> On a warrant issued by the Attorney General, an alien *may be arrested and detained* pending a decision on whether the alien is to be removed from the United States.  Except as provided in subsection (c) and pending such decision, the Attorney General--
>
> (1) may continue to detain the arrested alien; and
>
> (2) may release the alien on--
>
> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; [ . . .]

8 U.S.C. § 1226(a) (italicized emphasis added).[4]  "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention."  *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)); *see also Lopez-Campos*, 797 F.Supp.3d at 777 (stating that noncitizens under § 1226(a) "have a right to request a custody redetermination (*i.e.,* bond hearing) before an Immigration Judge") (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)).  The Immigration Judge then "evaluates whether there is a risk of nonappearance or danger to the community."  *Lopez-Campos*, 797 F.Supp.3d at 777.

3.      **Interpretation**

As of the writing of this decision, the Sixth Circuit has yet to decide whether 8 U.S.C.

---

[4]  Subsection (c), recently amended by the Laken Riley Act, makes detention mandatory for aliens found inadmissible or deportable under certain provisions and who have been "charged with," "arrested for," "convicted of," or admit to "having committed" certain listed crimes, but it does not apply here.  8 U.S.C. § 1226(c).

§ 1225(b)(2)(A) or § 1226(a) governs detention under these circumstances.[5] District court opinions within the Sixth Circuit have diverged, but the vast majority are in favor of the Petitioner's position. *See*, *e.g.*, *compare*, *e.g.*, *Ortiz Guiterrez*, 2026 WL 456065, at *3–5 (joining majority of jurists to find § 1226(a) governed petitioner's detention and respondents' detaining the petitioner without bond violated his due process rights) *with Coronado v. Sec'y, Dep't of Homeland Sec.*, No. 1:25-cv-831, 2025 WL 3628229, at *12–14 (S.D. Ohio Dec. 15, 2025) (holding § 1225(b)(2)(A) governed the petitioner's detention and dismissing habeas petition).[6]

The Court concludes that the plain language of § 1226(a) more naturally aligns with Vicente Cruz's detention, while the application of § 1225(b)(2)(A) to Vicente Cruz's detention requires a strained statutory interpretation and is not persuasive. The present-tense language used in § 1225(b)(2)(A) does not match Vicente Cruz's status because he was not "seeking admission" when he was detained by Respondents in December 2025. *See, e.g.*, *Lopez-Campos*, 797 F.Supp.3d at 781 ("Respondents completely ignore the term 'seeking' when attempting to broaden what 'seeking admission' means. This implies action—something that is currently occurring, and in this instance, would most logically occur at the border upon inspection. Noncitizens who are just 'present' in the country—those like [Petitioner], who have been here for years upon years and never proceeded to obtain any form of citizenship … —are not

---

[5] The Court is mindful that the issue is before the Sixth Circuit in the consolidated appeal of *Juan Lopez-Campos v. Raycraft*, No. 25-1965; *Juan Sanchez Alvarez v. Noem*, No. 25-1969; *Jose Contreras-Cervantes v. Raycraft*, No. 25-1978; *Jesus Pizarro Reyes v. Raycraft*, No. 25-1982.

[6] One unofficial tally of district court opinions can be found at Politico, Our Running List of Judges Who Have Ruled on ICE's Mass Detention Policy, https://www.politico.com/news/2026/02/18/trump-judges-immigration-detention-00784614?_sp_pass_consent=true, (last viewed 3/30/2026).

'seeking' admission."); *Lopez Benitez*, 795 F.Supp.3d at 488–489 (the phrase "seeking admission" necessarily implies present-tense action) (cleaned up); *Urrutia-Diaz v. Ladwig*, No. 2:25-cv-03098-TLP-atc, 2025 WL 3689158, at *6 (W.D. Tenn. Dec. 19, 2025) ("seeking" suggests action such that the noncitizen must actively be seeking admission and not simply residing in the country after entering unlawfully); *Del Villar v. Noem*, No. 4:25-cv-00137-GNS, 2025 WL 3231630, at *4–5 (W.D. Ky. Nov. 19, 2025) (finding that even if the petitioner might be an applicant for admission since he did not lawfully enter the country after inspection and authorization by immigration officer, the petitioner was not "seeking" admission since he had been in the country for more than 25 years) (quoting *Lopez-Campos*, 797 F.Supp.3d at 782).[7]

Further, continuing to look at the plain language of the statute, "[f]or section 1225(b)(2)(A) to apply, several conditions must be met—in particular, an 'examining immigration officer' must determine that the individual is: (1) an 'applicant for admission'; (2) 'seeking admission'; and (3) 'not clearly and beyond a doubt entitled to be admitted.'" *Martinez v. Hyde*, 792 F.Supp.3d 211, 214 (D. Mass. 2025); *see also Patel v. Crowley*, No. 25 C 11180, 2025 WL 2996787, at *7 (N.D. Ill. Oct. 24, 2025).  It does not appear that *any* of these findings were made here, since Vicente Cruz was not inspected by an immigration officer.  (Doc.

---

[7] As the court in *Lopez Benitez* aptly analogized:

> [S]omeone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as "seeking admission" to the theater.  Rather, that person would be described as already present there.  Even if that person, after being detected, offered to pay for a ticket, one would not ordinarily describe them as "seeking admission" (or "seeking" "lawful entry") at that point—one would say that they had entered unlawfully but now seek a lawful means of remaining there.***

*Lopez Benitez*, 795 F.Supp.3d at 489.

14-5 at PageID 130.)  After Vicente Cruz was taken into custody, DHS issued a Notice to Appear and checked the box charging him with being "an alien *present* in the United States who has not been admitted or paroled."  (*Id.* (emphasis added).)  DHS did not check the box for the alternative option of charging him with being "an arriving alien."  (*Id*.)  It is inconsistent and strains credulity for Respondents to suggest that the two potential charges are categorically the same when the Notice to Appear form treats them as alternative and distinct categories.  *See Patel*, 2025 WL 2996787, at *5.  As in *Patel*, the Government affirmatively treated Vicente Cruz as being detained under § 1226(a) on the Notice form, and it cannot now be heard to change its position to claim that he is detained under § 1225(b)(2)(A).  *See id*. at *5–6.  In sum, under the first rule of statutory interpretation—to give plain, ordinary meaning to each word in the statutes at issue—this Court finds that Vicente Cruz's detention is governed by § 1226(a), not § 1225(b)(2)(A).

The Court's conclusion is buttressed by the Supreme Court's seminal opinion in *Jennings*, albeit in dicta.  The Supreme Court in *Jennings* drew a clear distinction between noncitizens detained while seeking admission and noncitizens detained after already being in the country:

> . . . U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c).

583 U.S. at 289 (emphasis added); *see also*, *e.g.*, *Lopez-Campos*, 797 F.Supp.3d at 782 ("Put simply, Section 1225 applies to noncitizens 'arriving to the country' and Section 1226 governs detention of noncitizens 'already in the country.'") (quoting *Jennings*, 583 U.S. at 288); *Sanchez Alvarez v. Noem*, 807 F.Supp.3d 777, 787 (W.D. Mich. 2025) ("*Jennings* noted that § 1225 is

14

part of the 'process of decision [that] generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible.' *** Section 1226, however, applies to the process of 'arresting and detaining' aliens who are already living within the United States but are still subject to removal.") (quoting *Jennings*, 583 U.S. at 287), *on appeal* No. 25-1969 (6th Cir.); *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *5 (E.D. Mich. Sept. 9, 2025) ("Whereas § 1225 governs removal proceedings for 'arriving aliens,' § 1226(a) serves as a catchall…. § 1226(a) is the 'default rule' and 'applies to aliens already present in the United States.'") (quoting *Jennings*, 583 U.S. at 288, 301), *on appeal*, No. 25-1982 (6th Cir.). *Jennings* supports the conclusion that Vicente Cruz, who entered the United States in 2014 and has been residing in Ohio, is being detained under § 1226(a).

The Court holds that Respondents' refusal to provide Vicente Cruz with a bond hearing violates the INA, 8 U.S.C. § 1226(a). *See Jennings*, 583 U.S. at 306 (finding that regulations provide right to bond hearing for detentions under § 1226(a)); *Lopez-Campos*, 797 F.Supp.3d at 777 (same).

**D. Due Process Claim**

Vicente Cruz also alleges that the failure to provide him with a bond hearing violates his due process rights. (Doc. 3 at PageID 51–54, 56.) Respondents' primary defense is that due process does not require a bond hearing for a noncitizen detained pursuant to 8 U.S.C. § 1225(b)(2)(A). It argues that under Supreme Court precedent a noncitizen seeking initial entry into the country has "only those [due process] rights regarding admission that Congress has provided by statute." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139–140 (2020). That defense fails at the onset because the Court has held that Vicente Cruz's detention is

governed by 8 U.S.C. § 1226(a), under which bond hearings are provided, and not by

§ 1225(b)(2)(A).  This Court's holding is consistent with *Thuraissigiam* insofar as the Supreme

Court also noted that noncitizens "who have established connections in this country have due

process rights in deportation proceedings." *Id.* at 107.

This Court is persuaded that detaining Vicente Cruz under § 1225(b)(2)(A) deprived

him—and continues to deprive him—of due process rights under the Fifth Amendment.  "Non-

punitive detention in the immigration context violates the Due Process Clause, absent adequate

procedural protections or a special justification outweighing a petitioner's liberty interest."

*Ortiz Gutierrez*, 2026 WL 456065, at *4 (cleaned up).  As such, "detention [under § 1226(a)] is

discretionary and constitutionally constrained by due process." *Id*. (citation omitted).  The Court

finds that Respondents violated Vicente Cruz's due process rights by enforcing mandatory

detention under § 1225(b)(2).  The Court thus turns to the matter of what process is due to

Vicente Cruz.

Courts apply the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to

determine the adequacy of the process in the context of civil immigration detention.  *See, e.g.*,

*United States v. Silvestre-Gregorio*, 983 F.3d 848, 852 (6th Cir. 2020); *Wali v. Raycraft*, No.

1:26-cv-145, 2026 WL 496707, at *2 (S.D. Ohio Feb. 23, 2026).  *Mathews* instructs the Court to

consider three factors: (1) the private interest that will be affected by the official action; (2) the

risk of erroneous deprivation of that interest; and (3) the government's interest, including the

fiscal and administrative burdens that the additional or substitute procedures entail.  424 U.S. at

335.  Two of the three factors favor Vicente Cruz.

The first *Matthews* factor, the private interest that will be affected by the official action,

strongly favors Vicente Cruz.  As noted above, at the heart of the Fifth Amendment is the right to

be free from deprivation of liberty, and his liberty is at stake.  Vicente Cruz has a significant private interest in avoiding detention, and especially detention indistinguishable from criminal incarceration.  According to the Immigration Court records, Vicente Cruz is married to an American citizen, has one child with a second on the way, and owns a business.  He has started the process to apply for a green card.  Vicente Cruz's detention without a bond hearing impinges on his liberty.

The second factor also favors Vicente Cruz.  An individualized bond redetermination hearing provides a mechanism for the Immigration Judge to determine whether Vicente Cruz poses a flight risk or danger to the community, thereby reducing the risk of erroneous deprivation of his right not to be deprived of liberty without due process.  *See, e.g.*, *Lopez-Campos*, 797 F.Supp.3d at 785.  Finally, the last factor is neutral and does not favor either side.  The Government has a legitimate interest in ensuring noncitizens' appearance at removal proceedings and prevent harm to the community, but nothing in the record before this Court suggests that detention of Vicente Cruz is necessary to further the Government's interest.  Nor has the Government showed that a due process compliant individualized bond hearing would impose undue administrative or financial costs.  In fact, the Government provided bond hearings to detained noncitizens like Vicente Cruz for almost thirty years before DHS issued an Interim Guidance Regarding Detention Authority for Applicants for Admission on July 8, 2025 changing its detention policy.  *See* https://perma.cc/5GKM-JYGX.

In sum, two of the three *Mathews* factors favor Vicente Cruz and compel this Court to hold that his continued detention under § 1225(b)(2)(A) violates his Fifth Amendment right to due process.  *See Urrutia-Diaz*, 2025 WL 3689158, at *7–8 (all three *Mathews* factors weigh in petitioner's favor); *Del Villar*, 2025 WL 3231630, at *6–7 (all three factors favor the petitioner);

*Barco Mercado v. Francis*, 811 F. Supp. 3d 487, 503–506 (S.D.N.Y. 2025) (addressing due process claim); *see also Lopez Benitez*, 795 F.Supp.3d at 491–496 (discussing due process and *Mathews*); *Lopez-Campos*, 797 F.Supp.3d at 784–85 (applying *Mathews*); *Chavez v. Dir. of Detroit Field Office*, No. 4:25-cv-2061, 2025 WL 3187080, at *8 (N.D. Ohio Nov. 14, 2025) (summary conclusion of due process violation and collecting cases).

The Court holds that imposing mandatory detention upon Vicente Cruz under 8 U.S.C. § 1225(b)(2)(A) without a bond hearing violates Vicente Cruz's due process rights.

**D. Attorney Fees and Costs**

Vicente Cruz seeks attorney fees and costs. (Doc. 3 at PageID 60.) The Equal Access to Justice Act permits a court to award "reasonable fees and expenses of attorneys, in addition to costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States . . . ." 28 U.S.C. § 2412(b). The Court will consider a motion for any attorneys' fees and costs filed in conformity with the procedures set forth in the statute and the local rules.

**III. CONCLUSION**

For the reasons stated above, the Court **FINDS** that Vicente Cruz is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) but instead is detained under 8 U.S.C. § 1226(a). Therefore, detaining him without a bond hearing violates his statutory rights and due process rights under the Fifth Amendment. The Court **ORDERS that within seven days of entry of this Order,** Respondents shall either (1) provide Vicente Cruz with a due process compliant, individualized bond redetermination hearing before an Immigration Judge, at which the Government shall bear the burden of persuasion justifying his continued detention; or (2) release Vicente Cruz from custody. If Respondents choose to provide a bond hearing in lieu

of releasing Vicente Cruz from custody, then:

(1) Respondents shall provide a copy of this order to the Immigration Judge before any hearing;

(2) the Immigration Judge shall have jurisdiction over the matter and be empowered to grant bond;

(3) Respondents shall bear the burden of persuasion of justifying Petitioner's continued detention and adduce clear and convincing evidence that Petitioner is a danger to the community.  *See Black v. Decker*, 103 F.4th 133, 155 (2d Cir. 2024), *reh'g en banc denied* (Oct. 24, 2025); *Soto-Medina v. Lynch*, No. 1:25-CV-1704, — F. Supp. 3d —, 2026 WL 161002, at *9–11 (W.D. Mich. Jan. 21, 2026); *Azalyar v. Raycraft*, No. 1:25-cv-916, — F.Supp.3d —, 2026 WL 30741, at *5 (S.D. Ohio Jan. 2, 2026); and

(4) the Immigration Judge shall consider whether less restrictive alternatives to detention can reasonably address the Government's interest, as well as Petitioner's "ability to pay when setting any bond amount." *M.P.L. v. Arteta*, No. 25-CV-5307, 2025 WL 2938993, at *1 (S.D.N.Y. Oct. 16, 2025).

The Court further **ORDERS that within ten days of entry of this Order**, Respondents shall file a report informing the Court whether and when a due process compliant, bond redetermination hearing was held or whether and when Vicente Cruz was released from custody.

19

Additionally, the Butler County Sheriff's Motion to Dismiss (Doc. 7) and Vicente Cruz's Motion for Summary Judgment (Doc. 12) are **DENIED AS MOOT**.

**IT IS SO ORDERED.**

BY THE COURT:


S/Susan J. Dlott                                          
Susan J. Dlott
United States District Judge